## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| HAMILTON PARKS,<br><br>   Plaintiff,<br><br>v.<br><br>EGS FINANCIAL CARE, INC.;<br>iENERGIZER INC.; and RGS FINANCIAL, INC.,<br><br>   Defendants. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF:**<br><br>1. Telephone Consumer Protection Act, 47 U.S.C. §227<br>2. Fair Debt Collection Practices Act, 15 U.S.C. § 1692 |

Plaintiff Hamilton Parks ("Plaintiff"), by and through his attorneys, alleges the following against Defendants EGS Financial Care, Inc. ("EGS"); iEnergizer, Inc. ("iEnergizer"); and RGS Financial, Inc. ("RGS") (collectively, "Defendants"):

## INTRODUCTION

1. Count I of Plaintiff's Complaint against Credit One is based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. Among other things, the TCPA prohibits certain unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

2. Count II of Plaintiff's Complaint is based upon the Fair Debt Collection Practices Act ("FDCPA"), U.S.C. § 1692, which prohibits abusive, misleading, and unconscionable conduct in collecting a debt.

1

## PARTIES

3. Plaintiff is a natural person residing in the city of Greer, Greenville County, South Carolina.

4. Defendant EGS is a debt collector with its principal place of business located in Irvine, California. EGS can be served through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service, located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 96833.

5. Defendant iEnergizer is a debt collector with its principal place of business located in Austin, Texas. Defendant iEnergizer can be served through its registered agent, Agents for Delaware Corporations, Inc., located at 310 Alder Road, P.O. Box 841, Dover, Delaware 19904.

6. Defendant RGS is a debt collector with its principal place of business located at 1700 Jay Ell Dr., Suite 200, Richardson, TX 75081. RGS can be served through its registered agent, Malone Akerly Martin PLLC, located at 8750 N. Central Expressway, Suite 1850, Dallas, TX 75231.

7. At all relevant times hereto, Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## JURISDICTION AND VENUE

8. Jurisdiction of the court arises under 28 U.S.C. §§ 1331, 1332, and 1367; as well as 47 U.S.C. § 227.

9. Plaintiff also brings this complaint under federal diversity jurisdiction, 28 U.S.C. §1332, as the parties are completely diverse in citizenship (Plaintiff is a citizen of South Carolina and Defendants are citizens of California, Delaware, and Texas) and the amount in controversy exceeds $75,000.

10. Venue is proper pursuant to 28 U.S.C. § 1392(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

11. Defendants transact business here; therefore, personal jurisdiction is established.

## FACTUAL ALLEGATIONS

12. The debt(s) underlying this action were obligation(s) or alleged obligation(s) of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction were primarily for personal, family, or household purposes.

13. Defendants are attempting to collect an alleged credit card debt owed by Plaintiff to non-party Credit One Bank ("Credit One").

14. Upon information and belief, Defendants have a vendor agreement with Credit One to collect on debts allegedly owed to Credit One by Plaintiff and other consumers.

15. Upon information and belief, Defendants falsely identify themselves as Credit One whenever they communicate with debtors.

16. Defendants are separate and distinct entities from Credit One, and use their

3

own equipment to contact debtors.

17.     Upon information and belief, the telephone systems used by Defendants to call Plaintiff's cellular telephone "use a random generator to determine the order in which to pick phone numbers from a preproduced list" and then "store those numbers to be dialed at a later time." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1175 n.7 (2021).

18.     Upon information and belief, Defendants use their telephone systems to repeatedly call tens of thousands of debtors every day. Whenever a debtor would not answer, Defendants' telephone systems would use a random or sequential number generator to shuffle that debtor's telephone number back into a list of telephone numbers to be called later that day.

19.     Upon information and belief, Defendants' telephone systems are also capable of "spoofing" telephone numbers. "Spoofing" refers to the deliberate falsification of caller identification information to disguise the caller's identity. The ability to "spoof" caller ID information indicates the use of specialized dialing equipment, such as an automatic telephone dialing system.

20.     Upon information and belief, Defendants' systems used to call Plaintiff have the capacity to store a telephone number using a random or sequential number generator.

21.     Upon information and belief, Defendants' systems used to call Plaintiff have the capacity to produce a telephone number using a random or sequential number generator.

22.     Credit One has disclosed its vendor call records to Plaintiff.

23. In or around December 2020, Credit One assigned the alleged debt to Defendants for collection. Defendants began calling Plaintiff on his cellular telephone ending in 0487.

24. The calls originated from at least 43 unique phone numbers. The numbers Defendants used include 833-312-0277, 833-440-2175, 833-440-2176, 833-592-1813, 833-592-1814, 833-592-1815, 833-592-1816, 833-592-1817, 833-592-1819, 833-592-1820, 833-592-1821, 833-592-1822, 833-592-1823, 833-626-1290, 833-626-1291, 833-931-0587, 833-931-0591, 833-931-0596, 833-931-0597, 833-931-0598, 833-931-1694, 833-931-3152, 833-931-3153, 833-931-3154, 833-951-0597, 833-951-0598, 866-530-1085, 877-493-4846, 888-275-9639, 980-217-2582, 980-217-2671, 980-217-2682, 980-217-3237, 980-217-3238, 980-217-5169, 980-326-4327, 980-326-4335, 980-443-3331, 980-443-3337, 980-443-3369, 980-443-4352, 980-500-0826, and 980-500-0833.

25. Upon information and belief, these telephone numbers are owned, operated, or controlled by one or more Defendants.

26. On or about December 16, 2020, between 8:58 a.m. and 11:30 a.m. (a 2.5-hour period), iEnergizer called Plaintiff's cell phone five times.

27. On or about December 18, 2020, non-party First Contact called Plaintiff's cell phone seven times. On the seventh call from First Contact, at around 5:53 p.m., Plaintiff answered the phone.

28. After picking up the call, Plaintiff noticed a substantial pause before the First Contact representative began to speak, indicating the use of an automatic telephone dialing

system.

29. The First Contact representative, telling Plaintiff that it was Credit One, informed Plaintiff that Credit One was attempting to collect a debt incurred by Plaintiff.

30. Plaintiff informed the representative that he was recovering from a kidney transplant and had lost his job due to the COVID-19 pandemic. Plaintiff made it clear to the representative that he could not pay his debt at the moment and to only contact him by mail, thus revoking his consent to be called.

31. However, First Contact ignored this request, calling Plaintiff an additional 23 times between December 18, 2020 and January 22, 2021.

32. On January 22, 2021, First Contact called Plaintiff seven times. On the seventh call from First Contact, at around 4:03 p.m., Plaintiff picked up the phone.

33. After picking up the call, Plaintiff noticed a substantial pause before the First Contact representative began to speak, indicating the use of an automatic telephone dialing system.

34. The First Contact representative, telling Plaintiff again that she was calling from Credit One, informed Plaintiff that Credit One was attempting to collect a debt incurred by Plaintiff.

35. Plaintiff informed the representative that he had already told Credit One to stop calling him and reiterated that he was recovering from a kidney transplant and had lost his job due to the COVID-19 pandemic.

36. The representative responded that she saw that Plaintiff had revoked consent

in the account notes for Plaintiff.

37.     Plaintiff then advised First Contact's representative that Plaintiff would call when he could make a payment. Plaintiff further explained that if Credit One wanted to communicate with him about his alleged debt, it must do so only by mail, thereby revoking consent for a second time.

38.     Despite Plaintiff's second request not to be contacted his cellular phone any further, Defendants continued to inundate Plaintiff with calls.

39.     Between and including January 18, 2021 and February 8, 2021, non-party First Contact called Plaintiff **thirty-six (36)** times after he had revoked his consent to be called.

40.     Between and including February 15, 2021 and April 6, 2021, EGS called Plaintiff **ninety (90)** times after he had revoked his consent to be called.

41.     Plaintiff answered EGS's phone calls several times in this period. Whenever he would answer, he would hear a substantial pause before the EGS representative began to speak, indicating the use of an automatic telephone dialing system. Each time, EGS told Plaintiff that it was Credit One. Plaintiff would immediately hang up after hearing the call was from Credit One.

42.     Between and including April 13, 2021 and June 11, 2021, RGS called Plaintiff **two hundred fifty-eight (258)** times after he had revoked his consent to be called.

43.     Plaintiff answered RGS's phone calls several times in this period. Whenever he would answer, he would hear a substantial pause before the representative began to

speak, indicating the use of an automatic telephone dialing system. Each time, RGS told Plaintiff that it was Credit One. Plaintiff would immediately hang up after hearing the call was from Credit One.

44. Between December 2020 and July 2021—a seven-month period—Defendants collectively called Plaintiff's cellular telephone approximately **three hundred eighty-four (384)** times after Plaintiff had revoked consent to be called.

45. Upon information and belief, Defendants' employees have access to a log of contact history showing all attempts of Credit One and Defendants to call Plaintiff.

46. Upon information and belief, this contact history log shows that Plaintiff revoked consent to be called twice.

47. EGS and RGS repeatedly called Plaintiff, even though they knew they lacked Plaintiff's consent to do so.

48. Whenever Defendants were servicing Plaintiff's Credit One account, they would call Plaintiff virtually every day.

49. iEnergizer called Plaintiff five times in a 2.5 hour period.

50. First Contact regularly called Plaintiff seven (7) times in a single day.

51. EGS called Plaintiff nine (9) times in a single day.

52. RGS regularly called Plaintiff nine (9) times in a single day.

53. Defendants called Plaintiff at all times during the day.

54. Defendants also called Plaintiff's cell phone and left pre-recorded messages.

55. Defendants also called and texted, or attempted to call and text friends and

family of Plaintiff with the intention that they would communicate to Plaintiff that Credit One was attempting to collect a debt from him, causing Plaintiff additional embarrassment and distress.

56. Upon information and belief, Defendants' automatic dialers failed to return to the on-hook state within 60 seconds of completion of dialing.

57. Every time Plaintiff answered a phone call from Defendants, Defendants used the name of Credit One to identify themselves, rather than their true names.

58. Defendants identified themselves as Credit One to conceal their debt collector identities and shield themselves from liability under the FDCPA, all while placing hundreds of harassing debt collection phone calls to Plaintiff.

59. Every time Plaintiff answered a phone call from Defendants, Defendants failed to indicate that the communication was coming from a debt collector.

60. Every time Plaintiff answered a phone call from Defendants, Defendants failed to disclose that they were attempting to collect a debt and that any information obtained would be used for that purpose.

61. Upon information and belief, Defendants are familiar with the TCPA and FDCPA.

62. Defendants' conduct was not only done willfully but was done with the intention of harassing Plaintiff and causing Plaintiff such distress, so as to coerce him into paying the debt or paying more than he was able to.

63. Each and every one of Defendants' telephone calls caused Plaintiff

distraction, annoyance, frustration, and temporary loss of use of his telephone line.

64. Defendants' conduct exceeded reasonable collection efforts. EGS's and RGS's conduct was especially unreasonable because they called relentlessly after Plaintiff had explained that he could not pay at the time and expressly revoked consent to be called.

65. As a result of Defendants' conduct, Plaintiff has sustained actual damages including but not limited to, stress, anxiety, loss of sleep, headaches, embarrassment, anguish, severe emotional and mental pain. Plaintiff's ability to recover from his kidney transplant was exacerbated by the barrage of harassing calls from Defendants.

66. Defendants knew or should have known that Plaintiff was recovering from a kidney transplant, had lost his job due to COVID-19 and had no money to pay. Despite this knowledge, Defendants intentionally ignored Plaintiff's revocations of consent to be called and continued to harass him. Defendants' above-described actions were therefore knowing and willful, and in shocking disregard of Plaintiff's rights.

## COUNT I
### DEFENDANTS EGS AND RGS
### (Violations of the TCPA, 47 U.S.C. §227)

67. Plaintiff incorporates by reference the foregoing factual allegations as fully stated herein.

68. Defendants EGS and RGS ("TCPA Defendants") violated the TCPA. TCPA Defendants' violations include, but are not limited to the following:

   a. Within four years prior to the filing of this action, on multiple occasions, TCPA Defendants violated the TCPA, 47 U.S.C. §227 (b)(1)(A)(iii) which

states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

69. As a result of TCPA Defendants' violations of 47 U.S.C. §227, Plaintiff is entitled to declaratory judgment that TCPA Defendants' conduct violated the TCPA, and an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B). If the Court finds that the TCPA Defendants knowingly and/or willfully violated the TCPA, Plaintiff is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C).

## COUNT II
### ALL DEFENDANTS
**(Violations of FDCPA, 15 U.S.C. § 1692 *et seq*.)**

70. Plaintiff incorporates herein by reference the factual allegations of this complaint as though fully set forth herein at length.

71. Defendants violated the FDCPA. Defendants' violations include, but are not limited to, the following:

    a. 15 U.S.C. § 1692d, which prohibits engaging in conduct, the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of the alleged debt;

    b. 15 U.S.C. § 1692d(5), which prohibits causing a telephone to ring or engaging Plaintiff in telephone conversations repeatedly or continuously with intent to annoy, abuse or harass any person at the called number;

    c. 15 U.S.C. § 1692d(6), which prohibits the placement of telephone calls without meaningful disclosure of the caller's identity;

    d. 15 U.S.C. § 1692e, which prohibits a debt collector from using any false, deceptive, or misleading representations or means in connection with the collection of any debt;

    e. 15 U.S.C. § 1692e(10), which prohibits a debt collector from using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer; and

    f. 15 U.S.C. § 1692e(14), which prohibits a debt collector from using any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

72. Defendants' acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

73. Defendants were aware of Plaintiff's health and financial situation, that he was laid off due to COVID-19 and requested the calls to stop, but continued to call Plaintiff

in an attempt to harass him into paying the alleged debt.

74. As a result of the foregoing violations of the FDCPA, Defendants are liable to Plaintiff for actual damages, statutory damages, and attorneys' fees and costs.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Hamilton Parks respectfully requests judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants violated the FDCPA;

B. Declaratory judgment that TCPA Defendants violated the TCPA;

C. Statutory damages of $500.00 for each and every negligent violation of the TCPA pursuant to 47 U.S.C. §227(b)(3)(B);

D. Statutory damages of $1500.00 for each and every knowing and/or willful violation of the TCPA pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C);

E. Statutory damages against Defendants of $1,000.00 pursuant to the 15 U.S.C. § 1692k(a)2(A);

F. Actual damages against Defendants pursuant to 15 U.S.C. § 1692k(a)(1);

G. Costs and reasonable attorneys' fees against Defendants pursuant to the 15 U.S.C. § 1692k(a)(3);

H.      Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

I.      Any other relief that this Honorable Court deems appropriate.

RESPECTFULLY SUBMITTED this 1st day of March 2022.

                        */s/ Chauntel Bland*
                        Chauntel Bland, Esq. S.C. Bar #70150
                        Law Offices of Chauntel Demetrius Bland
                        463 Regency Park Drive
                        Columbia, S.C. 29210
                        E: chauntel.bland@yahoo.com
                        T: (803)319-6262
                        *Attorneys for Plaintiff*
                        *Hamilton Parks*